IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SANJANETTA BARNES, ) | |
| ) | |
| Plaintiff, ) | Case No. 11-cv-201-MEF |
| v. ) | |
| ) | |
| CITY OF DOTHAN, *et al.*, ) | (PUBLISH) |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Motions to Dismiss filed by Defendants the City of Dothan ("the City") (Doc. # 4), Police Chief Gregory J. Benton ("Benton") (Doc. # 8), Judge Rose Gordon ("Judge Gordon") (Doc. # 9), Dennis Sallas ("Sallas") and Russell Hughes ("Hughes") (Doc. # 10), and Mike Schmitz ("Schmitz") (Doc. # 11). This suit arises out of Plaintiff Sanjanetta Barnes's ("Barnes") August 8, 2008 arrest and subsequent conviction for disorderly conduct. For the foregoing reasons, Judge Gordon's Motion to Dismiss (Doc. # 9) is due to be GRANTED, and she is due to be DISMISSED as a party to this lawsuit. The motions filed by Benton, Sallas, Hughes, and Schmitz (Docs. # 8, 10, and 11) are due to be GRANTED to the extent that the official capacity claims against them are due to be DISMISSED. The motions are due to be DENIED in all other respects. The motion filed by the City (Doc. # 4) is due to be DENIED.

**I. JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331

(federal question), 1343 (civil rights), and 1367 (supplemental). The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

While Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. It is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561 (internal quotation and alteration omitted).

### III.  FACTUAL AND PROCEDURAL HISTORY

As this is a motion to dismiss, the following facts were taken from the factual allegations contained in Barnes's complaint.

On the night of August 8, 2008, Barnes was walking home from work when she was overcome with a bout of pain caused by ovarian cysts.  She sat on the sidewalk to recover from the pain.  Shortly thereafter, Hughes, a passerby and City employee, stopped to help her.  He tried to assist her into his car, but Barnes resisted, fearing that she was in danger.  After his encounter with Barnes, Hughes called the police.  Sallas responded to the call, and interviewed Barnes after arriving on the scene.  Barnes explained that she was able to walk home on her own, and refused medical attention.  At some point, Sallas determined that despite her assertions to the contrary, Barnes needed medical assistance.  He physically restrained her while he waited for the ambulance to arrive.  Shortly thereafter, defendant Officer Nick McElveen ("McElveen") arrived at the scene.  He informed Barnes that she was being unruly and forced her to wait in his patrol car for the ambulance.  Barnes was transported to the mental ward of a local hospital.

After his encounter with Barnes, McElveen filed a complaint alleging that Barnes had cursed at him.  As a result, Barnes was charged with disorderly conduct.  Barnes pled not guilty, and her case was set for trial in front of Judge Gordon.  The officers did not appear in court on the day of Barnes's trial, and Judge Gordon reset the trial to allow the officers another chance to appear.  Judge Gordon issued a subpoena notifying Barnes of her new trial setting.  Barnes claims that resetting the trial and issuing the subpoena are

3

extrajudicial and prosecutorial acts for which Judge Gordon should not receive judicial immunity.

On March 5, 2009, Judge Gordon allowed the complaining officers to revise their complaint. The revised complaint stated that Barnes pushed McElveen, an allegation not included in the original complaint. After several delays, Barnes's case went to trial on January 14, 2010. After listening to the 911 call Hughes made, Judge Gordon called Barnes and her attorney into chambers and informed them that Barnes could either plead guilty or the case would be sent immediately to the circuit court. Barnes claims that Judge Gordon adjudicated her as guilty before holding a trial.

Barnes alleges that the City, the officers involved with her arrest, and Judge Gordon conspired to violate Barnes's civil rights because Barnes is African American. Barnes's complaint includes the following causes of action:

1. A declaration from this Court that the Defendants conspired to violate Barnes's civil rights;

2. False Report or Complaint pursuant to 42 U.S.C. § 1983 brought against McElveen in his official and personal capacities;

3. Failure to Train pursuant to 42 U.S.C. § 1983 brought against the City and Benton;

4. Failure to Supervise pursuant to 42 U.S.C. § 1983 brought against Dothan's Mayor Schmitz and Benton;

5. Violation of Equal Protection pursuant to 42 U.S.C. § 1983 brought against

the City;

6. Violation of Procedural Due Process pursuant to 42 U.S.C. § 1983 brought against Judge Gordon in her personal capacity and the City;

7. Conspiracy to interfere with civil rights by obstructing justice pursuant to 42 U.S.C. § 1985(2) brought against all of the Defendants;

8. Conspiracy to interfere with civil rights by deprivation of rights, privileges, and immunities in violation of 42 U.S.C. § 1985(3) brought against all of the Defendants;

9. State law fraud claim brought against McElveen and the City; and

10. State law negligence claim brought against Police Chief Benton and Mayor Schmitz.

As stated above, five motions to dismiss have been filed. Portions of the motions are identical to each other. Because it is at times difficult to discern which defendants are making which arguments, the Court will often discuss the defendants collectively.

## IV. DISCUSSION

Section 1983 provides a remedy when person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g.*, 42 U.S.C. § 1983;[1] *Graham v. Connor*, 490 U.S.

---

[1] Section 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

386, 393-94 (1989) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotes omitted); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994).

Almost all of Barnes's claims are brought pursuant to § 1983, and all of the Defendant's arguments are directed at Barnes's § 1983 claims. Each argument will be discussed separately below.

### A. Statute of Limitations:

The Defendants first argue that all of Barnes's § 1983 claims are barred by the statute of limitations. All § 1983 claims are tort claims, and as such are subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985); *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). As Barnes brought her § 1983 claims in Alabama, that state's two year statute of limitations on personal injury suits is applicable to this case. Ala. Code § 6-2-38 (1975). The Defendants claim that because Barnes's arrest occurred more than two years before her claim was brought, her § 1983 claims are time barred and should be dismissed. If Barnes's § 1983 claims were based on her false arrest, then the Defendants would be absolutely correct.

However, most of Barnes's § 1983 claims are based on the allegedly false report

---

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6

McElveen filed in Judge Gordon's court on March 5, 2009.  (Doc. # 1 at ¶ 13).  Other § 1983 claims are based on Judge Gordon's conduct beginning March 3, 2009.  (Doc. # 1 at ¶ 11).  While Barnes alleges that the police arrested her for disorderly conduct "wrongfully" and without probable cause, she brings no claims for relief on that basis.  (See Doc. # 1 at ¶ 18).  Barnes filed her complaint in the Houston County, Alabama Circuit Court on February 28, 2011, days before the statute of limitations on her § 1983 claims would expire.  Accordingly, her claims are not time barred, and the Defendant's motions to dismiss are due to be DENIED on this basis.[2]

### B. Immunity:

The Defendants next argue that several of them have immunity from suit.  Judge

---

[2] The Defendants seem to allege in their reply brief that there is no recognized cause of action for filing a false report, and therefore Barnes's claim must be one either for false arrest or for malicious prosecution.  (Doc. # 19).  The Defendants then renew their argument that if the claim is one for false arrest, then it accrued at the point when Barnes was arrested.  That arrest occurred more than two years before Barnes filed her complaint, and therefore the Defendants argue that the statute of limitations has run on her claim.  However, a § 1983 cause of action accrues when the facts which would support a cause of action would become apparent to a reasonable person.  *See McNair*, 515 F.3d at 1173.  At the time that she was arrested, the officers had not yet filed their amended complaint, and therefore Barnes did not know about the facts which give rise to her claims.  Therefore, the time of her arrest cannot be the point in time at which her claim accrued.

Additionally, the Defendants' argument that allegations of a false complaint do not state a cause of action is not persuasive.  The Defendants cite only to an unpublished district court case for the conclusory proposition that a false complaint claim does not exist.  Had the Defendants briefed such an argument more thoroughly, this Court might have been persuaded to dismiss Barnes's false complaint claim.  However, it is unwilling to do so on a motion to dismiss based only on one citation to unpublished, persuasive authority.

Gordon claims that she is entitled to judicial immunity, and that therefore the claims against her should be dismissed.[3] The Defendants also argue that a subset of them—perhaps including Sallas, Hughes, and McElveen—are entitled to testimonial immunity. These two arguments will be discussed in turn.

### 1. Judicial Immunity:

Judge Gordon contends that as a municipal judge, she is immune from a suit for damages. A judge acting in her judicial capacity is absolutely immune from suits for damages even if the judge acts erroneously, corruptly, or in excess of jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–59 (1978); *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). A judge is subject to liability only when either 1) she has acted in the clear "absence of all jurisdiction," or 2) she performed functions outside of her judicial capacity. *Sibley*, 437 F.3d at 1070; *Scott v. Hayes*, 719 F.2d 1562, 1564 (11th Cir. 1983). "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Scott*, 719 F.2d at 1564.

---

[3] Whether or not a defendant is entitled to judicial immunity is a question that can be resolved on a motion to dismiss. *See, e.g.*, *Martin v. Meigs*, Civil Action No. 09-0308-WS-N, 2009 WL 2473565, at *2 (S.D. Ala. Aug. 11, 2009) (granting a motion to dismiss on the basis of judicial immunity); *Pierce v. Am. Gen. Fin., Inc.*, No. 3:06-cv-0985-WKW, 2007 WL 2254408, at * 5 (August 3, 2007).

Barnes contends that Judge Gordon's argument is based on "antiquated case law" and "should be summarily disregarded." (Doc. # 5). In support of her position, Barnes cites three cases from other circuits, but fails to explain how these citations demonstrate that Judge Gordon should not be entitled to immunity. Nonetheless, this Court must determine whether or not Judge Gordon is entitled to judicial immunity against Barnes's claims.

First, the Court must determine whether Judge Gordon was acting in the absence of all jurisdiction. Barnes's complaint does not contain such an allegation, and therefore the Court cannot conclude that Judge Gordon was acting without jurisdiction. Second, the Court must determine whether Judge Gordon was acting in the scope of her judicial capacity when the alleged constitutional violations occurred.

Barnes claims that Judge Gordon engaged in the following prosecutorial acts: issuing subpoenas, tracking down prosecution witnesses, presenting Barnes with a guilty plea, and deciding which charges should be brought against Barnes. (Doc. # 1 at ¶ 38). In order to determine whether or not these acts are judicial in nature, the Court must apply the four-factor test set out in *Scott*, 719 F.2d at 1564.

First, the Court must determine whether the acts that Barnes complains of constituted normal judicial functions. Barnes claims that Judge Gordon's acts were prosecutorial, and therefore beyond the scope of her judicial capacity. However, all of the acts that Barnes alleges are normal judicial functions. First, Barnes complains that Judge Gordon reset the trial of her case when the complaining officers couldn't appear.

9

Barnes claims that locating and keeping track of prosecution witnesses is a job for the prosecutor, not the judge. However, docket management and case scheduling are certainly normal judicial functions.

Second, Barnes claims that Judge Gordon signed and issued several subpoenas requiring Barnes to appear in court, and that doing so is a prosecutorial function. This Court disagrees. The fact that attorneys may be permitted to sign subpoenas does not mean that judges cannot also do so, or that when a judge chooses to sign a subpoena, such an action is anything but a normal judicial function.

Third, Barnes claims that Judge Gordon adjudicated her guilty before listening to any evidence in the case. While this action may have been improper, finding a criminal defendant guilty is well within the scope of normal judicial function.

All of the acts Barnes complains of constituted normal judicial function, and Barnes has failed to present any authority or argument to the contrary. Additionally, Barnes fails to allege in her complaint that any of the acts she complains of took place outside the confines of the courtroom on in chambers. When Judge Gordon rescheduled the trial, she did so in the courtroom, and when Judge Gordon told Barnes that she was going to be found guilty of disorderly conduct, the Judge did so in her chambers.

Obviously, the acts Barnes complained of were in connection with a case pending before Judge Gordon, namely Barnes's disorderly conduct charges. All of the incidents that Barnes complains of resulted from a visit with the judge in her judicial capacity.

After applying the four factors as set out in *Scott*, 719 F.2d at 1564, it is the

opinion of this Court that Judge Gordon is entitled to judicial immunity from the claims Barnes brings against her.  Accordingly, Judge Gordon's motion to dismiss is due to be GRANTED and Judge Gordon is due to be DISMISSED as a defendant to this lawsuit.

### 2. Testimonial Immunity:

As stated above, it is difficult to tell exactly which of the Defendants are arguing entitlement to testimonial immunity.  The City's motion contains a section entitled "Police Officer Absolutely Immune for Testimony in Judicial Proceedings."  (Doc. # 4 at 5).  However, there are two Defendants in this case who are police officers–Sallas and McElveen.  Since the City's motion doesn't specify which police officer should be entitled to testimonial immunity, the Court will assume that the argument was advanced on behalf of both officers.  Defendants Sallas and Hughes's motion includes a section entitled "Absolute Immunity for Testimony in Judicial Proceedings."  (Doc. # 10).  Again, this motion doesn't specify which defendant is claiming testimonial immunity, and therefore the Court will analyze the argument as if both had Sallas and Hughes had made it.

The Defendants are correct in asserting that witnesses are absolutely immune from damages based on their testimony.  *See Briscoe v. LaHue*, 460 U.S. 325 (1983). However, the Court cannot discern any factual allegations that would give rise to a defense of testimonial immunity. Nowhere does the complaint allege that Hughes, Sallas, or McElveen testified at any proceeding involving Barnes.  In fact, Barnes claims that no testimony or evidence was presented at all during her trial.  (Doc. # 1 at ¶ 15).  While

Barnes does allege that the filing of false reports and the giving of false testimony at trial is a widespread problem facing the City, she doesn't specifically allege that any of the defendants in this case gave false testimony. (*See* Doc. # 1 at ¶ 33). Accordingly, there is no basis for applying testimonial immunity, and the Defendants' motions are due to be DENIED on that basis.

### C.  § 1983 claims against the City

Section 1983 requires that a plaintiff demonstrate that the alleged constitutional violations occurred "under color" of state law. 42 U.S.C. § 1983. In other words, § 1983 requires a plaintiff to demonstrate that "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Gene Thompson Lumber Co. v. Davis Parmer Lumber Co.*, 984 F.2d 401, 403 (11th Cir. 1993) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Under this color-of-state law requirement, a municipality can only be held liable under § 1983 when an employee's execution of an official policy or custom is responsible for the plaintiff's injury. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable [under § 1983] for the actions of [an employee] only when municipal 'official policy' causes a constitutional violation.") (citing *Monell*, 436 U.S. at 694–95). Thus, to satisfy the under-color-of-state-law standard, a plaintiff in a § 1983 suit against a municipality must establish that the acts giving rise to the injury arose from one of three sources: (1) "an official government policy"; (2) "the actions of an

12

official fairly deemed to represent government policy"; or (3) "a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno*, 218 F.3d at 1276.[4]

The Defendants seem to argue that Barnes has not sufficiently demonstrated a disproportionate number of African Americans are arrested for disorderly conduct, and therefore has failed to demonstrate an official custom or policy.[5]  However, the Defendants are moving to dismiss the claims against them pursuant to Rule 12(b)(6). Therefore, the relevant inquiry is whether Barnes has sufficiently *pled* the existence of an official custom or policy, not whether Barnes has provided sufficient evidence to *establish* such a custom or policy.  Barnes herself has not substantively responded to this argument, having chosen to only file a substantive response to the first motion to dismiss (Doc. # 4), which does not contain this argument.

Barnes alleges the following claims against the City: 1) that the City is liable for failing to train its police officers, 2) that the City is liable for failing to supervise its officers, 3) that the City violated Barnes's right to equal protection by failing to adequately train and supervise its police officers, and 4) that the City joined the

---

[4] Where, as here, a plaintiff sues a municipality under § 1983, he cannot premise liability upon the doctrine of respondeat superior.  *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."); *Gold*, 151 F.3d at 1350 ("The Supreme Court has placed strict limitations on municipal liability under section 1983.  There is no respondeat superior liability making a municipality liable for the wrongful actions of its [employees].").

[5] Defendants argue that the Eleventh Circuit applies a heightened pleading standard in § 1983 cases.  However, the heightened pleading standard has been disavowed by the Eleventh Circuit in the wake of the Supreme Court's *Twombly-Iqbal* line of cases.  *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

13

conspiracy to interfere with Barnes's civil rights.

The Eleventh Circuit has thoroughly explained what a plaintiff must allege with regard to the custom or policy requirement of a failure-to-train claim:

> Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants, as follows:
>
>> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . .
>
> To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.

*Gold*, 151 F.3d at 1350.

Barnes has clearly alleged in her complaint that the City knew or should have known about the disparity in disorderly conduct arrests and that nothing has yet been done to remedy the situation.  (Doc. # 1 at ¶ 25, 29, 33).  Therefore, while she has not pointed to an official policy on the City's books, Barnes has provided factual allegations sufficient to state a claim against the city based on it's failure to adequately supervise and train its police force.  Accordingly, the Defendants' motions to dismiss are due to be DENIED on this ground.

### D.  § 1983 claims against individual defendants in their official capacities

It is well established that a suit against an individual municipal employee in his official capacity is really a suit against the municipality itself.  In *Kentucky v. Graham*, 473 U.S. 159 (1985), the United States Supreme Court sought to eliminate lingering confusion about the distinction between personal-capacity and official-capacity suits.  Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Id.*, at 165 (quoting *Monell,* 436 U.S. at 690, n.55 (1978)).  Thus, suits against municipal officials in their official capacity should be treated as suits against the municipality.  *See, e.g.*, *Brown v. Neumann,* 188 F.3d 1289, 1290 (11th Cir. 1999) (a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents).

In cases in which the plaintiff files suit against both the municipality and the individual municipal employee in his or her official capacity, several courts have dismissed the official capacity claims as redundant.  *See, e.g.*, *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1185 (M.D. Ala. 1999) (Albritton, J.); *Bethel v. City of Mobile*, Civil Action No. 10-0009-CG-N, 2011 WL 1298130, at *4 (S.D. Ala. April 5, 2011).   The Defendants request that this Court follow suit and dismiss the claims Barnes brings against the individual defendants in their official capacities.  Because the claims against the individual defendants in their official capacities are redundant and because the City has been joined as a defendant in this action, the Defendants' request is due to be GRANTED on this ground.

## V. CONCLUSION

In accordance with the reasons set forth in this memorandum opinion, it hereby ORDERED that:

1) Judge Gordon's Motion to Dismiss (Doc. # 9) is GRANTED. She is DISMISSED as a party to this lawsuit.

2) The Motions filed by Benton, Sallas, Hughes, and Schmitz (Docs. # 8, 10, 11) are due to be GRANTED in part and DENIED in part. The motions are GRANTED with respect to the claims brought against Benton, Sallas, Hughes, and Schmitz in their official capacities. These official-capacity claims are DISMISSED. The motions are DENIED in all other respects.

3) The City's Motion to Dismiss (Doc. # 4) is DENIED.

Done this the 6th day of July, 2011.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE