IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SANJANETTA BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:11-cv-201-MEF |
| v. | ) | (WO—Publish) |
| | ) | |
| CITY OF DOTHAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause comes before the Court on Defendant Nick McElveen's Motion to Dismiss (Doc. # 21). The underlying dispute has its genesis in Plaintiff Sanjanetta Barnes's arrest and conviction for disorderly conduct in 2008. This led to Barnes filing a complaint against the City of Dothan, Police Chief Gregory Benton, Judge Rose Gordon, Officer Dennis Sallas, City of Dothan employee Russell Hughes, Mayor Mike Schmitz, and Officer Nick McElveen. The other defendants have already filed motions to dismiss (*see* Docs. # 4, 8, 9, 10, 11), which this Court granted as to Judge Gordon and granted in part and denied in part as to everyone else, except McElveen, because he did not join in those motions (Doc. # 20). For the reasons discussed below, Barnes's complaint is due to be DISMISSED without prejudice as to McElveen. And because the basis for McElveen's dismissal likely applies to all of the defendants, Barnes is ORDERED to

1

show cause as to why the Court should not dismiss her complaint as to the other defendants too.

## II. JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over this case under 28 U.S.C §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental). The parties do not contend that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper under 28 U.S.C. § 1391(b).

## III. LEGAL STANDARD

A motion to dismiss mainly tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). It does not delve into disputes over the proof of the facts alleged—such a crucible is reserved for the summary judgment stage. With this in mind, the Court accepts as true all well-pled factual allegations in the complaint, viewing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). The Court will grant a motion to dismiss "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

A motion to dismiss also requires compliance with some minimal pleading standards. Indeed, although a plaintiff's complaint generally need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.

Civ. P. 8(a)(2), the plaintiff must still allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. Nor does it suffice if the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561.

## IV. BACKGROUND

As this is a motion to dismiss, the following facts, which the Court accepts as true at this stage of the proceedings, come from the allegations in Barnes's complaint.

On the night of August 8, 2008, Barnes was walking home from work when she was overcome with a bout of pain caused by ovarian cysts. She was sitting on the sidewalk recovering from the pain when Hughes, a passerby and City of Dothan employee, stopped to help her. He tried to load her into his car, but Barnes resisted, fearing that she was in danger. After this encounter, Hughes called the police. Officer Sallas responded to the call and interviewed Barnes after arriving on the scene. Barnes explained that she could walk home on her own and refused medical attention.

Observing Barnes, Sallas determined that, despite her protestations, she needed

3

medical assistance. He physically restrained her while waiting for an ambulance. When the emergency workers arrived, Barnes signed a treatment waiver and the ambulance left the scene. Sallas then let Barnes continue on her way.

Soon after Barnes started to leave, Officer McElveen arrived at the scene, informed Barnes that she was being unruly, and placed her in his patrol car. He then called another ambulance. This time, the paramedics forced Barnes to get in, and she was taken to the mental ward of a local hospital.

Meanwhile, Officer McElveen filed a complaint alleging that Barnes had cursed at him. This led to prosecutors bringing a disorderly conduct charge against Barnes. *See* Ala. Code § 13A-11-7. Barnes pled not guilty in district court, and Judge Gordon set her case for trial. The officers failed to appear for the first setting, so Judge Gordon reset the trial to give them another chance to appear. In between the first and second trial setting, Judge Gordon allowed the complaining officers to revise their complaint to add that Barnes pushed Officer McElveen.

After several delays, Barnes's case went to trial on January 14, 2010. And after listening to the 911 call made by Hughes, Judge Gordon called Barnes and her attorney into chambers and informed them that Barnes could either plead guilty or have the case sent immediately to the circuit court. Barnes told Judge Gordon that she wanted a jury trial in circuit court. Judge Gordon characterized this as a stipulation of guilt and sentenced Barnes to 180 days in jail, ordered her to pay a $500 fine, and charged her

4

$176 in court costs. Barnes does not allege any facts about what happened in the circuit court, nor does she state whether she appealed her conviction to the Alabama Court of Criminal Appeals or the Alabama Supreme Court.

Against this background, Barnes alleged that the City of Dothan, the officers involved with her arrest, and Judge Gordon conspired to violate her civil rights because of her race. More specifically, Barnes's complaint alleges, among other things, that McElveen violated her civil rights by filing a false report and by entering into a conspiracy to obstruct justice and violate her civil rights. She asserts these claims against McElveen under the Declaratory Judgment Act, 28 U.S.C. § 2201-2; a variety of federal civil rights statutes, 42 U.S.C. §§ 1983, 1985(2), 1985(3); and under Alabama law.

## V. DISCUSSION

Barnes brings most of her claims under 42 U.S.C. § 1983, a statute providing a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g.,* 42 U.S.C. § 1983,[1] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating

---

[1]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5

federal rights elsewhere conferred") (internal quotes omitted); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994). McElveen argues that Barnes's failure to allege that her state court conviction was overturned bars her claims. And to this end he cites *Heck v. Humphrey*, 512 U.S. 477 (1994), claiming that it requires a § 1983 plaintiff contesting a state court criminal conviction to allege a favorable termination of the matter. Barnes—or, more accurately, Barnes's counsel—failed to address this issue in the one-page response brief submitted to the Court to contest McElveen's motion to dismiss.

## A. The applicability of the favorable termination rule

McElveen claims that Barnes cannot press a § 1983 claim because "any award in the plaintiff's favor would 'necessarily impugn' the validity of [her] conviction," which would violate established precedent. (Doc. # 21.) It is true enough the Supreme Court held in *Heck v. Humphrey* that a plaintiff cannot use § 1983 as a vehicle to attack collaterally her state court conviction and later imprisonment—at least not unless she had the conviction "reversed . . . , expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994). But *Heck*, unlike this case, dealt with an incarcerated prisoner with access to federal habeas corpus review. In *Spencer v. Kemna*, 523 U.S. 1 (1998), five Justices agreed—albeit in dicta—that *Heck*'s favorable termination rule does not apply to unincarcerated plaintiffs who, like Barnes, never realistically had recourse to federal habeas review. So the question becomes, does *Heck*'s

6

favorable termination rule have an exception for scenarios where plaintiffs, like Barnes, never had the opportunity to use the federal habeas statute?

The issue is a close question. The *Heck* rule, on the one hand, seeks to keep plaintiffs from using § 1983 as an end around 28 U.S.C. § 2254's more exacting procedural requirements. This suggests that the unavailability of habeas review creates an equitable exception to *Heck* that would allow a plaintiff to access federal court by way of § 1983. On the other hand, the *Heck* majority worried about the federalism concerns implicated by allowing plaintiffs to undermine state court criminal convictions with civil tort suits. With these worries in mind, the Court stated, "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."[2] *Heck*, 512 U.S. 484. Despite this explicit statement, a number of circuit courts have recognized an equitable exception to *Heck*, allowing a § 1983 suit to proceed in the face of an unaltered state court conviction. *See, e.g.*, *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001); *Wilson v. Johnson*, 535 F.3d 262, 267 (4th Cir. 2008); *Powers v. Hamilton Cnty. Public Defenders Comm'n*, 501 F.3d 592, 601 (6th Cir. 2007); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999); *Nonnette v. Small*, 316 F.3d 872, 876–77 (9th Cir. 2002); *Cohen v. Longshore*, 621 F.3d 1311, 1315 (10th Cir. 2010). But a number of circuit courts have reached the opposite result, declining to recognize an equitable exception to *Heck*. *See, e.g.*, *Figueroa v. Rivera*, 147 F.3d 77,

---

[2] The *Heck* Court did not, however, impose an exhaustion requirement on § 1983 actions. *Heck*, 512 U.S. at 483, 489; *see also Edwards v. Balisok*, 520 U.S. 641, 649 (1997).

7

79–81 (1st Cir. 1998); *Gilles v. Davis*, 427 F.3d 197, 209–10 (3d Cir. 2005); *Entzi v. Redmann*, 485 F.3d 998, 1003–1004 (8th Cir. 2007).

The *Heck* Court's rather clear statement requiring a favorable termination of the plaintiff's conviction seems to put Barnes's claims to bed. But the High Court's statement amounts to non-binding dicta since *Heck* dealt with a prisoner-plaintiff who had access to federal court through the habeas statute. *See, e.g.*, *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007) (Carnes, J.) ("Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court . . . is another thing."). *Heck* can thus be read as inapplicable to § 1983 claims brought by non-prisoners. *See Heck*, 512 U.S. at 500 (Souter, J., concurring) (stating "sensible way to read" majority opinion is that it only applies to "prison inmates seeking § 1983 damages . . ."); *Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) (per curiam) (noting that question remains open).

The Eleventh Circuit has nibbled on the edges of this issue but has yet to confront it directly. For example, in *Morrow v. Federal Bureau of Prisons*, the court of appeals found *Heck* inapplicable "where Plaintiff is not in custody *and* where Plaintiff's action—even if decided in his favor—no way implies the invalidity of his conviction." 610 F.3d 1271, 1272 (11th Cir. 2010) (Edmonson, J.) (emphasis added). Yet *Morrow* did not explicitly adopt the equitable exception recognized by other circuit courts,[3] nor did it

---

[3] Judge Anderson concurred specially in *Morrow* to make clear that he supported the opinion to the extent that it adopted an equitable exception to *Heck* for "plaintiffs that are no longer in custody and

deal with a plaintiff whose claim would impugn the invalidity of his conviction. In *Harden v. Pataki*, the court of appeals similarly found that *Heck* did not bar the plaintiff's claim. 320 F.3d 1289, 1296 (11th Cir. 2003). But the *Harden* court did so because the claim did not call into question the plaintiff's state court conviction. *Id.* And although the court relied on an equitable exception to *Heck* to supplement its holding, *id.* at 1298, this discussion was not necessary to the decision, which makes it non-binding dicta. *Denno v. Sch. Bd. of Volusia City*, 218 F.3d 1267, 1283 (11th Cir.2000) ("Dictum may be defined as a statement not necessary to the decision and having no binding effect."); *see also Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1315 n.9 (11th Cir. 2005) (noting that question of impossibility exception to *Heck* remains open question in Eleventh Circuit).

Since neither the Supreme Court nor the Eleventh Circuit has answered the question directly, the Court turns to unpublished Eleventh Circuit opinions and district courts within the circuit for guidance. In a case directly on point, the United States District Court for the Southern District of Florida held that *Heck* barred the plaintiff's § 1983 claims even though she had no opportunity to file a federal habeas corpus petition. *Domotor v. Wennet*, 630 F. Supp. 2d 1368 (S.D. Fla. 2009). In a short, unpublished per curiam opinion, the Eleventh Circuit affirmed, stating, "As the district court properly explained . . . , so long as the [state law convictions] remain undisturbed, [*Heck*] bars

who, despite due diligence, could not have obtained habeas corpus relief." 610 F.3d at 1274 (Anderson, J., concurring).

appellant's claims." *Domotor v. Wennet*, 356 F. App'x 316, 316 (11th Cir. 2009). An

Eleventh Circuit panel has reached the same result in two other unpublished opinions.

*Christy v. Sheriff of Palm Beach Cnty.*, 288 F. App'x 658, 666 (11th Cir. 2008); *Vickers*

*v. Donahue*, 137 F. App'x 285, 289 (11th Cir. 2005).

After reviewing the applicable precedent, the Court holds that *Heck*'s favorable

termination rule applies to Barnes's claims. The *Heck* opinion makes clear that

> . . . to recover damages for allegedly unconstitutional
> conviction or imprisonment . . . , a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid
> by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254. A claim for damages
> bearing that relationship to a conviction that has not been so
> invalidated is not cognizable under § 1983.

512 U.S. at 486–87. Although reading the above quote as extending only to prisoners is a

*sensible* way to read the opinion, it is not the *best* way to read it for three reasons.

First, the ways in which a plaintiff can receive a favorable termination include the

possibility of a habeas reversal. But this only implies that habeas review is *sufficient* to

overturn a conviction; it does not mean that the availability of a federal forum is

*necessary* to do so. In fact, the plaintiff has a number of other ways to seek reversal by

the state, which, if successful, would allow the § 1983 claim to proceed. *Cf. Baker v. City*

*of Hollywood*, No. 08-cv-60294, 2008 WL 2474665, at *7 (S.D. Fla. June 17, 2008)

("even though a habeas corpus action is currently unavailable to Plaintiff here, [she] was

not without an avenue to seek relief from [her] conviction."). Second, "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 at 486. And because they are not, it makes sense to steer challenges to state court convictions into the channels already set up for this purpose, such as a direct appeal or state collateral review. Third, principles of federalism and comity require the federal courts to refrain from taking over the States' police powers and undermining their judicial processes. Allowing plaintiffs to attack state court convictions with federal civil suits implies a distrust of state courts—it impugns their character, competency, and commitment to the rule of law—without warrant to do so.

In sum, a thorough review of the applicable case law, combined with the reasons discussed above, persuades this Court that *Heck*'s favorable termination rule applies to § 1983 claims brought by a plaintiff who never had access to federal habeas review. The Court, moreover, holds that *Heck* also applies to the § 1985 claims. Therefore, *Heck* governs the claims now before the Court.

### B. Applying the favorable termination rule to Barnes's claims

Having decided that *Heck*'s favorable termination rule applies to Barnes's case, the Court must analyze Barnes's various allegations, asking whether each impugns her state court conviction. If an allegation calls her conviction into question, it is *Heck*-barred; if it does not, the claim survives McElveen's motion to dismiss.

Barnes's first cause of action seeks declaratory relief under 28 U.S.C. § 2201-2.

She asks the Court to declare that the defendants conspired to violate her civil rights, namely by agreeing to have her "wrongfully convicted and sentenced to 180 days in jail" and "wrongfully forced to pay a bond for a crime that she had been adjudicated guilty without a trial." (Doc. # 1-1 at ¶ 19.) Such a declaration would necessarily impugn her criminal conviction in state court, because this Court would be declaring that the state court *wrongfully* convicted her. Accordingly, her declaratory judgment claim is *Heck*-barred.

Her next few causes of action—all brought under § 1983—similarly undermine her state court conviction. First, she claims that McElveen submitted a false complaint to municipal court because he "did not have sufficient facts that would lead to the conviction of Ms. Barnes on a disorderly conduct charge." (Doc. # 1-1 at ¶ 25.) Second, Barnes alleges that the City of Dothan's failure to supervise its officers led to McElveen lying and submitting a false complaint, which "caused Ms. Barnes to subsequently be wrongfully convicted and incarcerated." (*Id.* at ¶ 28.) Third, she asserts violations of equal protection and procedural due process because "Officer McElveen did not have sufficient facts that would lead to the conviction of Ms. Barnes on a disorderly conduct charge." (*Id.* at ¶ 33.) Because each of these allegations center on Barnes's conviction and assail the basis for it, allowing her claims to proceed would necessarily impugn her conviction. Her § 1983 claims therefore run afoul of *Heck*'s favorable termination rule. *See, e.g.*, *Domotor*, 630 F. Supp. 2d at 1379–80 (holding *Heck* bars claims almost

12

identical to Barnes's); *Baker*, 2008 WL 2474665 (finding § 1983 claim based on "false charges" *Heck*-barred).

Barnes's final two federal causes of action allege a conspiracy between the defendants to obstruct justice, 42 U.S.C. § 1985(2), and interfere with her civil rights, 42 U.S.C. § 1985(3). She contends the object of the conspiracy was "to convict Ms. Barnes of disorderly conduct without sufficient evidence or a proper trial." (Doc. # 1-1 at ¶¶ 41, 44.) Like her § 1983 claims and request for a declaratory judgment, these allegations would call into question her state court conviction, which, in turn, would violate *Heck*.

### C. Barnes's state law claims

Barnes also brings two state law claims—one fraud-based, the other sounding in negligence. A district court "may decline to exercise supplemental jurisdiction over a claim" after the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). However, a federal court should generally dismiss pendent state law claims upon eliminating the federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because Barnes's federal claims—the only claims over which the Court has original jurisdiction—are due to be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. So the state law claims are due to be dismissed as well. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("encourag[ing] district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial.").

## VI. CONCLUSION

For the reasons discussed above, Nick McElveen's Motion to Dismiss (Doc. # 21) is hereby GRANTED and Barnes's Complaint (Doc. # 1-1) is DISMISSED without prejudice. The complaint may be re-filed upon satisfaction of *Heck's* favorable termination requirement. The plaintiff is further ORDERED to show cause on or before February 10, 2012, as to why the claims against the remaining defendants should not be dismissed as *Heck*-barred. If no cause is shown by that date, the Court will dismiss Barnes's complaint without prejudice. Plaintiff's counsel is admonished that a response that fails to address the pertinent facts and law will lead to a summary dismissal.

Done this the 31st day of January, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE